[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-10390
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-23459-AOR

LOREN MICHELLE PORTO,

Plaintiff-Appellant,

versus

ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 19, 2021)

Before WILSON, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

In this appeal, we review the district court's order[1] granting the Social Security Administration's motion for summary judgment, denying Loren Michelle Porto's motion for summary judgment, and affirming the Administration's denial of Porto's applications for disability insurance benefits and supplemental security income. We also affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Porto applied for disability benefits and supplemental security income, alleging that she had stopped working as a patient financial counselor due to a litany of medical conditions, including Crohn's disease, Factor V Leiden, Reynaud's phenomenon, psoriatic arthritis, and cutaneous vasculitis. Porto submitted pain questionnaires in which she stated that she could no longer sit, stand, or walk without pain, weakness, and fatigue. The Administration denied both applications, concluding that while Porto had "some limitations in the performance of certain work activities[,] . . . these limitations would not prevent [Porto] from performing past relevant work" as a patient financial counselor.

After Porto filed a motion for reconsideration, the state's agency consultant, Dr. Sunita Patel, reviewed Porto's records and concluded that she was able to sit, stand, or walk about six hours during the workday with normal breaks, meaning that Porto could perform the required functions of her job. According to Dr. Patel's

---

[1] With the parties' consent, the case was decided in the district court by a magistrate judge.

2

assessment, other than "mildly decreased" strength due to "prior digital clots in some fingers" of Porto's left hand, testing of Porto's manipulative limitations showed "normal coordination," "normal strength," "[n]o focal neurological deficits," and "[n]ormal range of motion of all joints" in her hands.  The Administration denied Porto's motion for reconsideration.

Porto then requested a hearing before an administrative law judge.  The administrative law judge heard testimony from Porto, who explained that on bad days—about two out of every three—her condition required her to take several lengthy breaks throughout the day.  When asked about her worst or "more symptomatic" days, Porto described the level of "sharp pain" in her stomach as an "eight."  Porto testified that the biweekly injections she took as part of her treatment left her with "flulike symptoms" and feeling fatigued and unable to work for about three days before she "fe[lt] any relief."

A vocational expert testified that a hypothetical individual who missed two weeks of work per month would not be able to maintain employment.  However, the vocational expert also testified that a "hypothetical individual with [Porto's] medical, educational and vocational profile who's capable of the full range of sedentary work" and "can frequently handle, finger and feel with both hands" could perform any of Porto's "past relevant work."

Porto also provided the administrative law judge with deposition testimony from her treating physician, Dr. Norman Gaylis, and documents of her medical conditions. Dr. Gaylis testified that Porto's treatments were unlikely to allow her to go back to work. He opined that "it would be very difficult under [Porto's] circumstances to perform an eight hour a day job on a regular basis."

After considering all the evidence, the administrative law judge found that, although Porto had several "severe impairments," she was "capable of performing past relevant work as a payroll clerk, benefits clerk II, and hospital admitting clerk" because her limitations did not preclude the work required by those jobs. The administrative law judge found that Porto's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." The administrative law judge gave "little weight" to Dr. Gaylis's opinion that Porto "could not perform even sedentary work" because his testimony was "starkly inconsistent with [his] own treatment notes." The administrative law judge gave "partial weight" to Dr. Gaylis's conclusions concerning Porto's physical limitations. The administrative law judge found that Porto generally showed "the residual functional capacity to perform sedentary work"—meaning that she could lift up to ten pounds at a time and occasionally lift or carry small articles—and that she could "frequently handle[,] finger[,] and feel with both hands." Thus, the administrative law judge concluded,

Porto was "not disabled" and therefore did not qualify for benefits or supplemental security income. The Administration's appeals council denied Porto's request for review, rendering the administrative law judge's decision final.

Porto challenged the administrative law judge's decision in the district court. In her summary judgment motion, Porto argued that: (1) the administrative law judge ignored much of the evidence in assessing her residual functional capacity, and, therefore, the administrative law judge's findings were not supported by substantial evidence; (2) the administrative law judge's decision to give only partial weight to Dr. Gaylis's deposition testimony that Porto could not "sustain the performance of sedentary work" was "wholly conclusory" and "devoid of reasoning"; and (3) "the [administrative law judge] failed to articulate adequate reasons for discrediting" Porto's subjective complaints about her pain. The Administration responded with its own summary judgment motion, arguing that the record supported the administrative law judge's residual functional capacity finding, substantial evidence supported the administrative law judge's decision, and the administrative law judge properly weighed the evidence after considering the entire record.

The district court rejected all three of Porto's arguments, determining that (1) the administrative law judge properly analyzed the entire record, and the conclusions were supported by substantial evidence; (2) the administrative law judge "showed

5

good cause to discount Dr. Gaylis' medical opinions," as the decision was "sufficiently supported by substantial evidence and articulated with enough clarity to allow for . . . meaningful review"; and (3) the administrative law judge articulated her reasons for discrediting Porto's subjective pain testimony, and those reasons were supported by substantial evidence.    The district court granted the commissioner's motion for summary judgment, denied Porto's motion, and affirmed the administrative law judge's decision.

## STANDARDS OF REVIEW

"We review de novo the district court's decision on whether substantial evidence supports the [administrative law judge's] decision." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  We therefore review the Administration's benefits and supplemental security income decisions for substantial evidence, and we review whether the correct legal standards were applied de novo. See Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  Substantial evidence is any relevant evidence, greater than a scintilla, that a reasonable person would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). If, in light of the record as a whole, substantial evidence supports the Administration's decision, we will not disturb it. Id. at 1439.  Under this standard of review, we will not decide the facts anew, make credibility determinations, or

6

reweigh the evidence.  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011).

## DISCUSSION

Porto challenges the district court's order on two grounds.  First, she argues that the administrative law judge's residual functional capacity finding was not supported by substantial evidence given how the administrative law judge weighed the opinions of her physician, Dr. Gaylis, and the state's consultant, Dr. Patel. Second, she argues that substantial evidence did not support the administrative law judge's finding that her subjective complaints about pain were inconsistent with the rest of the record evidence.[2]

*Substantial Record Evidence Supports the Administrative Law Judge's Weighing of Medical Testimony and Denial of Porto's Claim.*

Porto contends that the record lacks substantial evidence supporting the administrative law judge's findings that Dr. Gaylis's medical opinion merited only "partial weight," that Porto's symptoms were controlled or stable at the time of the hearing, and that physical and neurological examinations showed Porto within

---

[2] Porto also raises three arguments for the first time on appeal:  (1) the administrative law judge's decision did not provide a sufficient basis for judicial review; (2) the administrative law judge improperly relied on Dr. Patel's medical opinion; and (3) the administrative law judge failed to address a medical document in which Dr. Gaylis opined that Crohn's disease and psoriatic arthritis symptoms would limit Porto's "ability to perform work-related tasks."  We do not consider these arguments because Porto failed to raise them in the district court.  See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004) (explaining that, as a general principle, we will not address an argument in a social security appeal unless it was raised in the district court).

normal limits.  She makes three arguments:  (1) the administrative law judge gave partial weight to Dr. Gaylis's medical opinion without considering treatment notes showing that, even when Porto's labs showed that she was doing well, she could still have symptoms, either at that time or in the near future as her treatment wore off; (2) even though Crohn's disease may not have been active at times, the symptoms were persistent; and (3) the finding that physical and neurological examinations showed Porto within normal limits ignored abnormalities documented in multiple clinical examinations.

The burden is on an individual claiming eligibility for disability benefits to prove the disability.  See Moore, 405 F.3d at 1211.  The administrative law judge uses a five-step, sequential evaluation process to determine whether a claimant is disabled.[3]  Winschel, 631 F.3d at 1178.  "If [the administrative law judge] can find that [the claimant is] disabled or not disabled at a step," the administrative law judge

---

[3] The Social Security Regulations provide the five sequential steps for determining a claimant's disability status:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity . . . assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [residual functional capacity], age, education, and work experience.

Winschel, 631 F.3d at 1178.

makes the "determination or decision and [does] not go on to the next step."  20 C.F.R. § 404.1520(a)(4).

In assessing a claimant's residual functional capacity at the fourth sequential step, the administrative law judge considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work."    20 C.F.R. § 404.1545(a)(4).  The administrative law judge examines all relevant medical and other evidence, including "any statements about what [the claimant] can still do that have been provided by medical sources" and "descriptions and observations" by the claimant and lay witnesses of any limitations, including limitations resulting from pain.  Id. § 404.1545(a)(3).

The administrative law judge must state with particularity the weight given to different medical opinions and the supporting reasons.  Winschel, 631 F.3d at 1179. The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004).  Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his own medical records.  Winschel, 631 F.3d at 1179.  When good cause exists, the administrative law judge may disregard a treating physician's opinion but must clearly articulate the reasons for doing so.  Id.  But the administrative law judge is

not required to discuss every piece of evidence, so long as the decision is not a "broad rejection" that would prevent a reviewing court from concluding that the administrative law judge considered the claimant's medical condition as a whole. Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).

In this case, the administrative law judge gave Dr. Gaylis's medical opinion partial weight, noting inconsistencies with treatment notes and with the administrative law judge's residual functional capacity findings. Porto challenges this finding by arguing that even though her symptoms improved at times, other record evidence showed that they would later intensify, and that evidence should have been given more weight. The issue before this court, however, is not whether the administrative law judge could have relied on other evidence in assigning weight to Dr. Gaylis's testimony, but whether substantial evidence in the record supports the administrative law judge's findings. Lewis, 125 F.3d at 1440. It does.

Porto's first two arguments assert that the administrative law judge failed to consider treatment notes showing that Porto's symptoms could have been present even when or shortly after she had good labs. These arguments fail because the administrative law judge relied on the most recent, objective medical evidence to determine, as the law required, the most work Porto was able to do despite her restrictions. See SSR 96-8p, 61 Fed. Reg. 34,474-01. For example, in early 2016, Porto complained that her Raynaud's symptoms had flared up and that she was

10

fatigued, but Dr. Gaylis's notes from an appointment two weeks later showed that her conditions were stable, her lab work showed no inflammatory markers, and Dr. Gaylis "really [couldn't] find much to base" the self-reported fatigue on. The administrative law judge adequately explained that good cause supported giving the limitations described by Dr. Gaylis partial weight because the record, in its entirety, supported a different finding. See Winschel, 631 F.3d at 1179.

The administrative law judge also had good cause for assigning Dr. Gaylis's deposition testimony little weight because that testimony was inconsistent with Dr. Gaylis's own treatment notes, which included a recent (at the time) medical report that reflected the absence of several symptoms, including fatigue, abdominal pain, and joint pain. The notes showed that Porto was "doing fairly well": "her labs are great her hermatologist is happy Raynauds is improved and without a doubt the systems has been very beneficial." The administrative law judge's findings were therefore supported by substantial evidence.

As to Porto's third argument, that the administrative law judge's findings concerning Porto's physical and neurological examinations failed to credit the abnormalities discovered during some examinations, the administrative law judge was not required to discuss every piece of evidence because the determination to give partial weight to Dr. Gaylis's medical opinion was not a broad rejection of the medical opinion. Dyer, 395 F.3d at 1211. The administrative law judge considered

11

Dr. Gaylis's medical opinion, the most recent objective medical evidence, Porto's subjective testimony concerning her symptoms, and the record as a whole. Because substantial evidence supports the administrative law judge's finding, we will not re-weigh the evidence. See Winschel, 631 F.3d at 1178.

*The Administrative Law Judge Properly Assessed Porto's Testimony Concerning Her Pain and Limitations.*

In her second issue, Porto contends that the administrative law judge improperly assessed her subjective allegations of pain and limitations. She argues that the record lacks the substantial evidence required for the administrative law judge to disregard her testimony. We disagree.

A three-part "pain standard" applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. Wilson, 284 F.3d at 1225. The pain standard requires evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged pain arising from that condition or a showing that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. Id. If an administrative law judge does not credit a claimant's testimony concerning pain, the administrative law judge's credibility determination—whether explicit or implicit—must be obvious from the record. Foote v. Chater, 67 F.3d 1553, 1561–62 (11th Cir. 1995). We will not disturb a

clearly articulated credibility finding if supported by substantial record evidence. Id. at 1562.

In this case, Porto presented evidence of her underlying medical condition and testified that her condition resulted in chronic pain and fatigue, often preventing her from leaving her house. She testified that she lacked the "stamina or energy to work an eight-hour day," and even if she could work, employers would likely not allow her to take the lengthy breaks her condition required. The administrative law judge noted that Porto's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence" and accepted Porto's statements "only to the extent they [could] reasonably be accepted as consistent with the objective medical and other evidence."

The administrative law judge's credibility finding was supported by extensive record evidence. The medical records showed that Porto "had normal range of motion," "normal strength, tone, gait, and coordination with no sensory deficit," "normal range of motion of her joints and spine," and the ability to "walk unassisted." Moreover, the record contained evidence that Porto's health had improved in the two years before the hearing, and several of her symptoms were non-existent at the same time she was testifying about the severity of her symptoms.

Because substantial evidence supported the administrative law judge's reasons for finding Porto's testimony not entirely credible, we do not disturb the

credibility findings.  See Foote, 67 F.3d at 1562.  While the record did reflect that Porto's symptoms waxed and waned, the objective medical evidence supported the administrative law judge's finding that her statements concerning those symptoms' intensity, persistence, and limiting effects were not consistent with the medical evidence.  See Lewis, 125 F.3d at 1440.  Accordingly, we affirm as to this issue, too.

**AFFIRMED.**